IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                    CRIMINAL ACTION NO. 2:17-cr-00022

TYREASE ANTONIO MCMILLON,

        Defendant.

MEMORANDUM OPINION AND ORDER

Pending before the court is Defendant Tyrease Antonio McMillon's Motion for Compassionate Release. [ECF No. 63]. For the following reasons, Defendant's Motion is **DENIED**.

I.    Background

On June 1, 2017, Mr. McMillon pleaded guilty to being a Felon in Possession of a Firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). [ECF No. 43]. On August 30, 2017, I sentenced Mr. McMillon to a term of 120 months imprisonment followed by 3 years of supervised release. [ECF No. 57]. He now petitions the court for compassionate release based on the combination of ongoing medical problems and time already served. [ECF No. 63].[1]

---

[1] Mr. McMillon's Motion suggests that he should be released because he has completed "approximately 63% of the total imposed sentence for his offense of conviction." [ECF No. 63, at 7]. However, as Mr. McMillon points out, the percentage of a sentence that a defendant has served is not dispositive to the compassionate release analysis. *See United States v. Kibble*, 992 F.3d 326, 331 (4th Cir. 2021). Because Mr. McMillon did not address why his time served should be considered in this analysis, I will not

Mr. McMillon is currently imprisoned at FCI Terre Haute in Indiana.[2] *Find an Inmate*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/index.jsp (first name "Tyrease," last name "McMillon") (last visited July 18, 2023). His anticipated release date is October 24, 2025. *Id.* FCI Terre Haute is a medium security correctional institution with an adjacent minimum security satellite camp. *FCI Terre Haute*, Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/tha/ (last visited July 27, 2023). FCI Terre Haute currently houses 1,228 total inmates. *Id.*

In support of his Motion, Mr. McMillon alleges that he currently suffers from several medical conditions, including an enlarged heart, an irregular heartbeat, Ebstein's anomaly,[3] and high blood pressure. [ECF No. 63, at 3]. Because of those conditions, Mr. McMillon contends that his immediate release is warranted pursuant to 18 U.S.C. § 3582(c)(1)(A).[4]

---

address it here.

[2] Following his sentencing, Mr. McMillon was incarcerated at FCI Jessup in Georgia. *See* [ECF No. 60]. After his submission of the instant Motion, Mr. McMillon was transferred to FCI Terre Haute for reasons unknown to this court. To the extent the pending Motion is predicated on conditions at FCI Jessup, the Motion is moot as Mr. McMillon has been transferred out of that facility. *See e.g.*, *United States v. Sevilla-Acosta*, No. 10-CR-0230(22), 2020 WL 6589797, at *1 (D. Minn. Nov. 10, 2020) (finding motion for compassionate release was mooted by defendant's transfer to a different facility); *United States v. Hooker*, No. 18 Cr. 768, 2020 WL 6504539, at *3 (S.D.N.Y. Nov. 5, 2020) (recognizing that arguments relating to conditions at inmate's facility are moot where inmate has been transferred); *United States v. Freedland*, No. 15-175-1, 2020 WL 4926542, at *6 (E.D. Pa. Aug. 21, 2020). However, because the Motion does not directly address conditions of his incarceration specific to FCI Jessup— and because the Motion is generally ambiguous in the relief it requests and the reasons justifying that relief—I find that the defendant's transfer to FCI Terre Haute is of no consequence to this analysis.

[3] Ebstein's anomaly is a congenital heart defect in which the tricuspid valve separating the right atria and the right ventricle is malformed. *Ebstein Anomaly*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/ebsteins-anomaly/symptoms-causes/syc-20352127 (last visited July 18, 2023). Some individuals diagnosed with Ebstein's anomaly may not require treatment at all, while others require lifelong care. *Id.*

[4] Because the government failed to respond to Mr. McMillon's Motion, I must rely on the record as it stands to formulate my analysis.

## II. Discussion

The First Step Act empowers criminal defendants to request compassionate release for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i). Before a defendant makes such a request, he must first ask the Federal Bureau of Prisons to do so on his behalf and then wait thirty days. *See id.* § 3582(c)(1)(A). Upon such a motion from BOP or from a defendant (after BOP denies the request or thirty days have elapsed since the request was filed), a court "may reduce the term of imprisonment." *Id.* § 3582(c)(1)(A)(i).

For me to reduce Mr. McMillon's sentence under compassionate release, I must find that Mr. McMillon (1) exhausted his administrative remedies; (2) demonstrated "extraordinary and compelling reasons" supporting his release; (3) has shown that he is not a danger to the safety of others; and (4) has demonstrated that his release is consistent with the factors enumerated in 18 U.S.C. § 3553(a). *See, e.g., United States v. Howard*, No. 4:15-CR-00018-BR, 2020 WL 2200855, at *2 (E.D.N.C. May 6, 2020); U.S.S.G. § 1B1.13 (2018).

### a) Exhaustion of Administrative Remedies and Section 3582(c)(1)(A)

Mr. McMillon attached documentation to his Motion which demonstrates that he requested compassionate release from the warden at FCI Jessup on at least two occasions in 2020. [ECF No. 63-1]. Mr. McMillon's first two requests were denied[5] by

---

[5] In support of each of those denials, the warden at FCI Jessup explained that Mr. McMillon does not meet the criteria for compassionate release as he is classified as a "medical care level 2 inmate with no medical restrictions." [ECF No. 63-1, at 2]. The letter further indicates that while Mr. McMillon is enrolled in the Chronic Care Clinic for hypertension and heart disease, he does not have any physical restrictions hindering his independence or daily activities. *Id.*

3

the warden on September 10, 2020 and November 12, 2020, respectively. *Id.* Mr. McMillon's subsequent appeal of those denials was rejected on June 30, 2021. *Id.* Because each of his requests for compassionate release have been denied, I find that Mr. McMillon has exhausted his administrative remedies. I now turn to whether Mr. McMillon has alleged "extraordinary and compelling reasons" justifying compassionate release.

### b) Extraordinary and Compelling Reasons

There are "disagreements [among district courts] about the precise definition of 'extraordinary and compelling reasons' justifying compassionate release." *United States v. Cotinola*, No. 13-CR-03890-MV, 2020 WL 2526717, at *3 (D.N.M. May 18, 2020). The Sentencing Commission, in the application notes to § 1B1.13, specifies certain types of "extraordinary and compelling reasons" which may make a defendant eligible for compassionate release. *United States v. Parks*, No. 3:18-cr-311, 2022 WL 256329, at *2 (W.D.N.C. Jan. 26, 2022). Specifically listed as factors for consideration are a defendant's (1) terminal illness, if any; (2) serious medical condition that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover;" or (3) age, where a defendant who is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and has "served at least 10 years or 75 percent of his or her term of imprisonment." U.S.S.G. § 1B1.13, cmt. n.1(A)–(B).

The United States Court of Appeals for the Fourth Circuit has clarified that

district courts are not bound by the enumerated extraordinary and compelling reasons listed in United States Sentencing Guideline § 1B1.13 because the Guidelines have not been updated since the passage of the First Step Act. *United States v. McCoy*, 981 F.3d 271, 283 (4th Cir. 2020) ("As of now, there is no Sentencing Commission policy statement 'applicable' to the defendants' compassionate-release motions, which means the district court need not conform . . . to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction."). Therefore, "district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *Id.* at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)). While I need not conform to the Sentencing Commission's guidance outlined in § 1B1.13, I find its list of "extraordinary and compelling reasons," to be helpful guardrails to my analysis.

Mr. McMillon has presented evidence that he suffers from various heart-related ailments and is currently undergoing treatment for those conditions at FCI Terre Haute. [ECF Nos. 63, 63-1]. However, Mr. McMillon has wholly failed to demonstrate how those conditions constitute extraordinary and compelling circumstances which support his early release. At no point in his Motion does Mr. McMillon explain how his continued incarceration will exacerbate his medical conditions, most of which were known at the time of sentencing. *See* [ECF No. 59 (listing Mr. McMillon's known ailments, including cardiomegaly and hypertension)]. Nor does Mr. McMillon's Motion describe: (1) how his medical condition will be improved by his release; (2) whether his incarceration has prevented him from

5

receiving adequate medical care; or (3) how his various plights constitute "serious medical conditions" that "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.1(A)–(B).[6] Mr. McMillon also offers no rebuttal to BOP's contention that he does not qualify for compassionate release because he has no medical restrictions impacting his independence and daily activities. *See* [ECF No. 63-1].

Rather, Defendant's Motion indicates that he has been regularly treated for his heart condition since becoming incarcerated. [ECF No. 63 (detailing his medication treatment and numerous hospital visits)]. While in BOP custody, Mr. McMillon has likewise undergone numerous procedures to diagnose, treat, and stabilize his irregular heartbeat, including at least two CT scans, an echocardiogram, and an ablation procedure. *Id.* Mr. McMillon has also been routinely transported to a local hospital and cardiology center for follow-up appointments to monitor his condition. *Id.* at 3. He has even participated in the BOP's Chronic Care Clinic. [ECF No. 63-1, at 2]. It appears that while Mr. McMillon undoubtedly suffers from several heart-related ailments, his condition has been monitored and treated by medical personnel throughout his incarceration.

Without any evidence upon which to evaluate the interplay between Mr. McMillon's medical condition and his incarceration, I cannot find "extraordinary and

---

[6] Importantly, Mr. McMillon is 37 years old—he is neither elderly nor terminally ill—and has not provided any evidence to suggest that his condition constitutes a serious medical illness from which he is not expected to recover.

compelling reasons" to reduce Mr. McMillon's sentence. *See United States v. Anderson*, No. 17-CR-00595-YGR-1, 2020 WL 2838797, at \*2 (N.D. Cal. June 1, 2020) (denying a defendant's motion for compassionate release because he failed to demonstrate the severity of his condition or how that condition was impacted by his incarceration).

### c) Danger to the Safety of Others

As Mr. McMillon has failed to demonstrate an "extraordinary and compelling reason" to reduce his sentence, my analysis can stop here. However, this court would be remiss not to address Mr. McMillon's assertion that his release would not pose a threat to society. In his Motion, Mr. McMillon contends that "he would not pose a threat to the safety of anyone in his community if he were given compassionate release" and claims that his three-year term of supervised release will keep him from "misstepping." [ECF No. 63, at 8].[7]

Mr. McMillon is a violent offender with a lengthy criminal history, featuring convictions for drug offenses, resisting arrest, and the battery of a corrections officer.

---

[7] Mr. McMillon's Motion cites to *United States v. Early*, No. 09-cr-282, 2020 WL 2112371, at \*5 (N.D. Ill. May 4, 2020), and raises, for the first and only time, a rather odd argument regarding the coronavirus. [ECF No. 63, at 8]. Mr. McMillon relies on *Early* for the proposition that the risk to the public of a defendant's early release "'does not outweigh the risk to [the defendant] from contracting the coronavirus while incarcerated,' particularly where 'the probation office and the court will be monitoring him while on supervised release.'" *Id.* However, at no point in his Motion does Mr. McMillon address the impact of coronavirus on his incarceration, nor does he explain that his condition renders him particularly susceptible to contracting the coronavirus while incarcerated. Simply put, Mr. McMillon did not make the coronavirus a cornerstone of his argument for compassionate release when discussing his health, and I certainly do not find a single reference to the pandemic persuasive enough to supersede the significant threat to the public that Mr. McMillon poses. Moreover, the public interest is not outweighed by this particular defendant's need to escape the coronavirus at FCI Terre Haute, which has no reported cases of the virus and has nearly all of its inmates vaccinated, including Mr. McMillon. *BOP Covid Statistics*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_statistics.html (last visited July 18, 2023).

*See* [ECF No. 59, at 22–29]. As for the underlying offense, Mr. McMillon not only unlawfully possessed a firearm, but he used that firearm in furtherance of a drug deal in which another individual was shot in the head. *Id.; see also* [ECF No. 6]. Though he was not ultimately charged in connection with the shooting itself, the record clearly establishes that at the time of the incident, Mr. McMillon alone possessed the pistol that was used to injure the victim. *Id.*

As I explained during sentencing, the nature of the underlying offense and Mr. McMillon's extensive criminal history dictated that he serve 120 months in prison—the maximum penalty for his violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). To suggest that Mr. McMillon is not a danger to his community simply because he promises not to be if released, is insufficient. I am likewise unpersuaded that Mr. McMillon's supervised release and the possibility of a return to custody will prevent his recidivism. Mr. McMillon knew that he was a convicted felon, and thus barred from possessing a firearm, at the time he committed the underlying offense. The knowledge that he could return to prison for possessing that firearm did not stop Mr. McMillon from doing so in May 2016.

Even if Mr. McMillon's medical condition presented an "extraordinary and compelling reason" for his release, I find that the threat he poses to his community renders his release improper pursuant to 18 U.S.C. §3582(c)(1)(A).

### d) Section § 3553(a) factors

Lastly, the factors set forth in 18 U.S.C. § 3553(a) compel the denial of Mr. McMillon's Motion. These factors include (i) "the nature and circumstances of the

offense and the history and characteristics of the defendant"; (ii) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to adequately deter criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; (iv) the sentencing guidelines; and (v) "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a).

As outlined above, Mr. McMillon's underlying offense was violent, as are several of his prior convictions. Based on the seriousness of Mr. McMillon's offense the need to promote respect for the law, to deter criminal conduct, and to avoid unwarranted sentencing disparities, I sentenced Mr. McMillon to 120 months of incarceration. To grant his Motion would be contrary to and inconsistent with the sentencing factors set forth in § 3553(a).

For these reasons, Defendant's Motion for Compassionate Release [ECF No. 63] is **DENIED**.

The court **DIRECTS** the Clerk to send a copy of this Order to the defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER: July 20, 2023

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE